**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**No. 26-cv-23710-FAM**

CENTER FOR BIOLOGICAL DIVERSITY, a
501(c)(3) nonprofit organization,

      Plaintiff,

v.

KEVIN GUTHRIE, in his official capacity as
Executive Director of the Florida Division of
Emergency Management,

      Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**"NOTICE OF PENDING, REFILED, RELATED OR SIMILAR ACTIONS"**

The Center for Biological Diversity's ("CBD") attempt to relate this case to *Friends of the Everglades, Inc., et al. v. Noem, et al.*, No. 1:25-cv-22896-KMW (S.D. Fla.) ("*FOE*")—in which it is also a plaintiff—is a transparent act of judge-shopping that this Court should reject. Indeed, to avoid admitting a violation of the Eleventh Circuit's still-pending stay of "the underlying case" in *FOE*, CBD represented to Defendant's counsel that this is a "different case" from *FOE*. But if this case is different enough to avoid improper claim splitting (and thus a violation of the Eleventh Circuit's stay), then it is different enough to fail to qualify as related. CBD cannot have it both ways: either it violated the Eleventh Circuit's order by claim splitting, or this case is not related to *FOE*. The Court should reject Plaintiff's attempt to relate and/or transfer this case to the *FOE* court. Indeed, as will be explained in Defendant's forthcoming motion, venue is not proper in the Southern District of Florida such that this case should be dismissed or transferred to the Middle District of Florida.

\* \* \* \*

In June 2025, the Florida Division of Emergency Management ("FDEM") opened a temporary immigration-detention facility at the Dade-Collier Training and Transition Airport in Ochopee, Florida (the "TNT facility"). CBD (the Plaintiff here) and another advocacy group sued FDEM and federal officials in this District under the National Environmental Policy Act (NEPA). *See FOE*, No. 1:25-cv-22896-KMW (S.D. Fla. filed June 27, 2025). The *FOE* plaintiffs also noticed on the docket their intent to bring additional claims under the Endangered Species Act, Clean Water Act, and National Park Service Organic Act. *FOE* Docs. 38, 38-1. Even though both Judges Altman and Ruiz held that the Southern District is an improper venue for challenges related to the TNT facility (which lies in the Middle District),[1] the district court in *FOE* entered a preliminary injunction requiring the closure of the detention facility.

Within days, the Eleventh Circuit stayed both "the preliminary injunction and the underlying case itself pending appeal," citing serious concerns about both venue and the merits. *Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 25-12873, 2025 WL 2598567, at \*1 (11th Cir. Sep. 4, 2025). The stay is in place "until resolution of th[e] appeal." *Id.* at \*13. An appeal remains pending, and is not resolved, until the mandate issues. *See, e.g.*, *CFTC v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020) ("The appeal lasts until we issue the mandate.").

In April 2026, the Eleventh Circuit vacated the preliminary injunction because Plaintiffs are unlikely to succeed on the NEPA claim. *See Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.*, 174 F.4th 822, 827 (11th Cir. 2026). "Because the environmentalists … failed to prove a likelihood of success on the merits," the court "d[id] not address the district court's

---

[1] *See C.M. v. Noem*, 796 F. Supp. 3d 1198, 1225-32 (S.D. Fla. 2025); *Garcia v. Guthrie*, No. 25-cv-23136 (S.D. Fla. July 16, 2025), Doc. 5 at 1. As discussed below, FDEM similarly intends to move to dismiss Plaintiff's complaint here for lack of venue.

ruling that venue was proper in the Southern District of Florida," instead leaving that question for the court to consider anew on a "more capacious record." *Id.* at 834. The mandate in the appeal has not yet issued, such that the stay of "the underlying case" in the district court remains in place—and, critically, was in place when Plaintiff filed this lawsuit on May 27, 2026.

If the claim in this case arises from the same nucleus of operative facts at issue in *FOE*, then it represents improper claim splitting, and CBD violated the Eleventh Circuit's stay order in filing it. *See Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). Accordingly, during a meet-and-confer on June 8, 2026, Defendant's counsel asked CBD's counsel to explain why filing this case was not improper. CBD's counsel responded that the filing was proper because these are "different cases." In its Notice of Pending, Refiled, Related or Similar Actions, however, CBD says the opposite, contending this case *does* arise from materially the same facts as *FOE* and thus should be transferred to the *FOE* court.

This Court should reject this transparent gamesmanship. Plaintiff cannot have it both ways. Having asserted that this CAA challenge is "different" enough to justify filing a separate action, Plaintiff may not now claim the actions are so intertwined that the Court must transfer the case back to the jurist Plaintiff prefers.

**1.** For starters, Plaintiff has not shown that this case qualifies for transfer under the Court's internal operating procedures. IOP 2.15.00 permits "transfer of similar actions" in two instances: (1) when the later-filed case "involves subject matter which is a material part of the subject matter of" the earlier-filed case, or (2) "for other reasons the disposition thereof would appear to entail the unnecessary duplication of judicial labor if heard by a different Judge." Plaintiff satisfies neither criterion.

3

First, the subject matter here is not a material part of *FOE*.  In *FOE*, Plaintiff asserts a procedural NEPA claim alleging that Defendants failed to conduct adequate environmental review before taking a supposedly "major federal action"—i.e., construction and operation of the TNT facility.  *FOE* Doc. 1 ¶¶ 62-73.  Plaintiff has also threatened FDEM with an ESA take claim—essentially, a claim that the facility threatens to harm endangered species.  *FOE* Doc. 38-1.  And it has contemplated a CWA claim against FDEM—basically, a claim that FDEM polluted waters of the United States by developing land inside the airport's preexisting footprint.  *Id.*

As Plaintiff conceded at the June 8 meet-and-confer, its CAA claim is "different."  Plaintiff contends here that FDEM violated the CAA by installing generators at the facility—which supposedly transformed the facility into a major air-pollution source—without obtaining a Prevention of Significant Deterioration permit (PSD permit).  *See* Doc. 1 ¶¶ 1-13.  Thus, although both cases generally "allege failures to comply with federal environmental statutes," Notice at 1, the regulatory frameworks vary.  NEPA asks whether there was major federal action requiring environmental review.  The ESA asks whether protected species are being taken.  The CWA asks whether jurisdictional waters were unlawfully filled or polluted.  And the CAA asks whether the facility is a major stationary source that requires a PSD permit.  Those are different legal questions, different regulatory schemes, and different factual inquiries.

Nor has Plaintiff shown that "air pollution emitted by the facility" played a material role in *FOE*.  Notice at 2.  It offers no citation to support that conclusory assertion.  *See id.*  And for good reason.  The *FOE* plaintiffs did not develop an air-pollution argument in their preliminary-injunction briefing, at the preliminary-injunction hearing, or in their appellate briefing.  They instead focused on other alleged harms, like disturbing wildlife through increased vehicular traffic and noise, contaminating wetlands, and emitting light pollution.  The two main references to air

4

pollution in *FOE* were passing lines in Plaintiff's complaint and ESA/CWA notice, neither of which was developed on the facts. *See FOE* Doc. 1 ¶¶ 51, 58 (alleging harm to "air and water quality"); *FOE* Doc. 38-1 at 23 (in which Plaintiff speculated that the "TNT site is likely also affecting air quality"). Those conclusory and undeveloped remarks hardly make air pollution a "material part" of *FOE*. IOP 2.15.00.

Air pollution is also unlikely to be a major part of *FOE* moving forward. After all, the NEPA claim is dead on arrival once the case returns to district court: The Eleventh Circuit held that the TNT facility is under state control, so it does not qualify as major federal action under NEPA. *Friends of the Everglades*, 174 F.4th at 833-34. And, as discussed, Plaintiff mentioned air quality just once in its 51-page notice of ESA and CWA violations, focusing instead on alleged water pollution, vehicular traffic, noise, light pollution, and related concerns. *See FOE* Doc. 38-1 at 23. Air pollution therefore is not an operative fact in *FOE* in any meaningful sense—precisely as Plaintiff's counsel represented when defending Plaintiff's decision to file this CAA case separately.

Second, Plaintiff does not identify any "other reasons" why this Court's resolution of this case would "unnecessar[ily] duplicat[e] … judicial labor." IOP 2.15.00. Plaintiff mainly says the cases involve overlapping parties. Notice at 2. But overlapping parties do not create duplicative judicial labor when, as here, the disputes are distinct. And, regardless, the parties here do not fully overlap. This case involves a single dispute between two parties: Plaintiff and FDEM. *FOE*, by contrast, involves multiple claims between a broader set of parties: Plaintiff, Friends of the Everglades, the Miccosukee Tribe of Florida, FDEM, the United States Secretary of the Department of Homeland Security, and the Director of United States Immigration and Customs Enforcement. That distinct roster of litigants cuts against transfer.

To the contrary, undertaking an intra-district transfer analysis would only duplicate judicial labor because, ultimately, this case must be dismissed—or transferred to the Middle District of Florida—for improper venue.  Fed. R. Civ. P. 12(b)(3).  As FDEM will explain in its forthcoming motion to dismiss, *see* Fed. R. Civ. P. 12(h)(1), venue for this Clean Air Act claim lies "only in the judicial district in which" the alleged pollution "source is located," 42 U.S.C. § 7604(c)(1).  Plaintiff alleges here that the TNT facility is a "major source of air pollution."  Doc. 1 ¶ 9.  Yet "the entirety of the Facility itself is located in Collier County," which is "in the Middle District."  *Friends of the Everglades*, 2025 WL 2598567, at *2.  And, specifically, Plaintiff points to generators as the source of air pollution, *see* Doc. 1 ¶¶ 5, 10-11—all of which are sited in Collier County.  Venue thus lies only in the Middle District of Florida.[2]

At bottom, Plaintiff asks the Court to transfer this CAA challenge because *FOE* also involves "allege[d] failures to comply with federal environmental statutes."  Notice at 1.  Yet courts have had no trouble independently resolving a host of TNT-facility challenges without routing every case to the first judge to hear a related issue.  Judge Ruiz, for example, did not transfer a conditions-of-confinement challenge to Judge Altman merely because Judge Altman had already resolved a confinement-related challenge.  *Compare C.M. v. Noem*, 796 F. Supp. 3d 1198 (S.D. Fla. 2025) (Ruiz, J.) (filed July 16, 2025), *with Castillo v. ICE*, No. 25-cv-23022 (S.D. Fla.) (Altman, J.) (filed July 7, 2025).  And Judge Dudek in the Middle District did not transfer a facility

---

[2] Even if the general venue statute applies, *see* Doc. 1 ¶¶ 16-28 (citing 28 U.S.C. § 1391(b)(2)), venue in this District is still improper, as none of the acts or omissions that Plaintiff claims occurred in this District bear a "close nexus" to Plaintiff's CAA claim.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372-73 (11th Cir. 2003); *see also Friends of the Everglades*, 2025 WL 2598567, at *10 n.9 ("not[ing] that a number of the activities and omissions the district court relied on to find a sufficient nexus to the Southern District do not appear to 'directly give rise' to the Plaintiffs' NEPA claim," and "question[ing] the district court's implication that the location of the Site itself is somehow peripheral to the events giving rise to the claim" (quoting *Jenkins Brick*, 321 F.3d at 1371)).

challenge to Judge Chappell, even though she too was considering a related challenge. *Compare M.A. v. Guthrie*, No. 2:25-cv-765 (M.D. Fla.) (Dudek, J.) (filed Aug. 22, 2025), *with H.C.R. v. Noem*, No. 2:25-cv-747 (M.D. Fla.) (Chappell, J.) (transferred to Judge Chappell on Aug. 20, 2025). By Plaintiff's lights, all these actions should have been consolidated before the first judge to touch a remotely similar challenge to the TNT facility. Nothing in IOP 2.15.00 supports that expansive view of this District's transfer process.

2.  Even if IOP 2.15.00 were satisfied, transfer under that procedure remains discretionary. Indeed, the IOPs confer "no rights" on litigants, *see* IOP Introduction, and IOP 2.15.00 directs only that the Court "determine whether" transfer is appropriate. Yet here, transfer is inappropriate because Plaintiff's request smacks of gamesmanship. To avoid the Eleventh Circuit's stay in Plaintiff's first environmental lawsuit, Plaintiff filed a second environmental lawsuit. Then, to justify that move, Plaintiff claimed the suits are "different" and turn on distinct operative facts. Now Plaintiff turns heel and claims the suits are materially related, and seeks transfer to the same court that entered the now-vacated injunction in *FOE*. That is exactly the sort of strategic maneuvering the random-assignment system seeks to prevent.

In the end, Plaintiff chose to file "different" legal claims in separate cases. The Court should hold Plaintiff to that choice. If the cases are different enough to evade the Eleventh Circuit's stay, they are different enough to remain before the judge to whom this case was randomly assigned. The Court should not allow Plaintiff to steer this case back to its preferred forum merely because doing so is now strategically convenient.

## CONCLUSION

The Court should decline to relate this case with the *FOE* case and/or transfer the case to the *FOE* court. As will be explained in Defendant's forthcoming motion, dismissal or transfer to the Middle District of Florida based on improper venue is required.

Dated: June 10, 2026

Respectfully submitted,

s/ *Jesse Panuccio*

Jesse Panuccio (FBN 31401)
Evan Ezray (FBN 1008228)
David Costello (FBN 1004952)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
jpanuccio@bsfllp.com

*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2026, the foregoing was filed with the Clerk of Court using

CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

<u>s/ *Jesse Panuccio*    </u>
Jesse Panuccio

9